UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA COLVIN,<br><br>Plaintiff,<br><br>v.<br><br>NASDAQ OMX GROUP, INC.,<br><br>Defendant. | Case No. 15-cv-02078-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Docket No. 15 |

## I. INTRODUCTION

Plaintiff Cynthia Colvin brought this action against Defendant NASDAQ OMX Group, alleging that Defendant wrongfully terminated her employment. Docket No. 1 (Compl.) at ¶ 51. Plaintiff alleges violations of the Fair Employment and Housing Act (FEHA), including race discrimination and retaliation, intentional infliction of emotional distress, and whistleblower retaliation. Defendant filed the instant motion to compel arbitration, based on Plaintiff signing a stand-alone confidentiality agreement. Docket No. 15 (Mot.) at 1; *see also* Docket No. 15-1, Exh. A (Confidentiality Agreement) at § 10.

Defendant's motion came on for hearing before the Court on October 15, 2015. For the reasons set forth below, the Court **GRANTS** Defendant's motion to compel arbitration.

## II. BACKGROUND

On November 8, 2012, Plaintiff received an employment offer from Defendant to work as a Client Support Specialist. Compl. at ¶ 12; Docket No. 18 (Colvin Dec.) at ¶ 5. The following day, Plaintiff received an envelope with an offer letter, Employee Confidentiality and Inventions and Assignment Agreement (Confidentiality Agreement), several booklets and handouts, a Lab Request Form, and an IRS Form I-9. Colvin Dec. at ¶ 8. The Confidentiality Agreement included

an arbitration clause, which states:

> Except as provided in Paragraph 9 of this Agreement, any dispute arising between the Parties under this Agreement, under any statute, regulation, or ordinance, under any other agreement between the parties, and/or in way [sic] relating to Employee's employment, shall be submitted to binding arbitration before the American Arbitration Association ("AAA") for resolution.

Confidentiality Agreement at § 10. The Arbitration clause further states that "[t]he arbitration shall be conducted in accordance with the AAA's Employment Arbitration Rules as modified herein."[1] *Id.* A copy of the AAA rule was not provided. Colvin Dec. at ¶ 11. Immediately following the arbitration clause is a severability clause which states:

> If any term or provision of this Agreement (or any portion thereof) is determined by an arbitrator or a court of competent jurisdiction to be invalid, illegal, or incapable of being enforced . . . NASDAQ OMX and Employee agree that an arbitrator or reviewing court shall have the authority to amend or modify this Agreement so as to render it enforceable and effect the original intent of the Parties to the fullest extent permitted by applicable law.

Confidentiality Agreement at § 11(b).

Plaintiff was not informed that the Confidentiality Agreement had any arbitration clause, but was told that she was required to sign the offer letter and Confidentiality Agreement in order to accept the employment offer. Colvin Dec. at ¶¶ 9, 10. Plaintiff was not given the opportunity to negotiate any of the terms, or to opt-out of the agreement. *Id.* at ¶¶ 10, 11.

### III.   DISCUSSION

The Federal Arbitration Act (FAA) provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, in determining the validity of any agreement to arbitrate,

---

[1] Plaintiff requests judicial notice of: (1) the AAA Rules, and (2) an AAA description of the differences between an individually negotiated employment agreement and employment arbitration plan. Docket No. 19 (RJN). The RJN is granted. Many district courts have found that judicial notice can be taken of the AAA Rules, "as the content of those Rules can be considered a 'fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be questioned.'" *Cancer Ctr. Assocs. for Research & Excellence, Inc. v. Phila. Ins. Cos.*, 1:15-CV-00084 LJO MJS, 2015 U.S. Dist. LEXIS 51091 at *13 fn. 3 (E.D. Cal. Apr. 17, 2015) (quoting Fed. R. Evid. 201).

1  federal courts should apply ordinary state-law principles that govern the formation of contracts."
2  *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010) (citation and internal modifications
3  omitted).  In the instant case, California law applies per the express terms of the Confidentiality
4  Agreement.  *See* Confidentiality Agreement at § 11(a) ("This Agreement shall be construed in
5  accordance with and shall be governed by the laws of the State of California . . . .").  The parties
6  do not dispute that California law applies, or that this Court has the authority to determine the
7  validity of the arbitration clause at issue in this case.[2]

A.   <u>Agreement to Arbitrate</u>

Plaintiff contends that there is no valid agreement to arbitrate.  Docket No. 17 (Opp.) at 1.
Generally, "arbitration is a matter of contract and a party cannot be required to submit to
arbitration any dispute which he has not agreed so to submit."  *AT&T Techs., Inc. v. Commc'n
Workers of Am.*, 475 U.S. 643, 648 (1986).  Thus, "when one party disputes the making of the
arbitration agreement, the [FAA] requires that the court proceed summarily to the trial thereof
before compelling arbitration under the agreement."  *Sanford v. MemberWorkers, Inc.*, 483 F.3d
956, 962 (9th Cir. 2007) (citation omitted).  Under California law, the party seeking to compel
arbitration "bears the burden of proving its existence by a preponderance of the evidence."
*Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

Defendant presents a signed copy of the Confidentiality Agreement, which Plaintiff signed
and dated on November 9, 2012.  Confidentiality Agreement at 5.  Plaintiff in turn argues that
there is no enforceable arbitration agreement here because the arbitration language was contained
in the Confidentiality Agreement, and Defendant made no effort to bring the arbitration clause to
her attention.  Opp. at 6.  In support of her claim, Plaintiff cites *Sparks v. Vista Del Mar Child &
Family Services*, in which the California Court of Appeal found unenforceable an arbitration
clause that was contained in an Employee Handbook that was distributed to all employees.  207
Cal. App. 4th 1511, 1522 (2012).  The Handbook stated that it was "a general summary of the

---

[2] Defendant does not, for example, argue that there is a clear and unmistakable delegation clause, or that California's unconscionability analysis is pre-empted by the FAA or the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).

3

agency's personnel policies, work rules and benefits," and included an arbitration clause on pages 35 and 36. *Id.* at 1515-16. Employees were then required to sign an acknowledgment form which stated that the Handbook "contains important information about [defendant's] general personnel policies," and that the employee was to be "governed by the contents of the Handbook." *Id.* at 1516. The arbitration clause was not highlighted, and employees did not have to acknowledge the arbitration clause in writing. *Id.* at 1519. Significantly, a new version of the Handbook was later distributed, which specifically required employees 'to sign a full arbitration agreement that is signed by both the Employee and the Human Resources Director or designee." *Id.* at 1517.

The Court of Appeal concluded that the Handbook's arbitration agreement was unenforceable. Significantly, the Handbook's language itself suggested that it 'was informational, rather than contractual." *Id.* at 1520; *see also id.* at 1522 ("the Handbook expressly provides: 'this Handbook is not intended to create a contract of employment . . . .'"). Thus, absent the defendant pointing out the arbitration requirements, the "plaintiff should not be bound to arbitrate." *Id.* at 1520. In other words:

> [t]o support a conclusion that an employee has relinquished his or her right to assert an employment-related claim in court, there must be more than a boilerplate arbitration clause buried in a lengthy employee handbook given to new employees. At a minimum, there should be a specific reference to the duty to arbitrate employment-related disputes in the acknowledgment or receipt form signed by the employee at commencement of employment.

*Id.* at 1522. The fact that the employee signed an acknowledgment form did not alter the court's conclusion, as the acknowledgment "[a]t best . . . expressed the employee's understanding that he must comply with personnel policies and obligations, rather than an agreement to arbitrate."

Unlike *Sparks*, the arbitration clause here is not contained in a separate and lengthy employee handbook, but within the five-page Confidentiality Agreement that Plaintiff was required to sign and date. Furthermore, in contrast to an employee handbook which appeared to be merely informational, the Confidentiality Agreement here is clearly a contract that expressly imposes obligations on Plaintiff "in consideration of Employee's employment and continued employment with NASDAQ OMX and the compensation paid or to be paid for Employee's services during his/her employment." Confidentiality Agreement at 1. Per California case law,

"[e]very contract requires mutual assent or consent (Civ. Code, §§ 1550, 1565), and ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001). At bottom, Plaintiff signed a contract containing an arbitration clause; the fact that she did not actually read it or know about does not negate mutual consent. *See Tompkins v. 23andMe*, Case No. 2014-cv-05682-LHK, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014); *Hernandez v. Badger Constr. Equip. Co.*, 28 Cal. App. 4th 1791, 1816 (1994). The Court therefore finds that a valid agreement to arbitrate was formed.

B.   Unconscionability

The FAA requires courts to enforce arbitration provisions in written contracts "save upon such grounds as exist at law or in equity for the revocation of any such contract." 9 U.S.C. § 2. The United States Supreme Court has interpreted the FAA's "saving clause" to permit "agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability . . . ." *AT&T Mobility LLC*, 131 S. Ct. at 1746. Thus, "[u]nder California law, an arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively unconscionable," *Pokorny*, 601 F.3d at 996, unless that state law is preempted by the FAA.

"Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015). In determining unconscionability, "the core concern of unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013). While both procedural and substantive unconscionability are required, "they need not be present to the same degree." *Pokorny*, 601 F.3d at 996. Instead, a sliding scale is applied, such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs, Inc.*, 24 Cal. 4th 83, 114 (2000).

1.  Procedural Unconscionability

"In assessing procedural unconscionability, the court, under California law, focuses on the factors of surprise and oppression in the contracting process, including whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate." *Pokorny*, 601 F.3d at 996. The "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 24 Cal. 4th at 113. An adhesion contract is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* (citations omitted). The oppression element is nearly always satisfied by an adhesion contract. *Id.*

Here, the contract is one of adhesion. Plaintiff had no opportunity to negotiate the terms, nor was she given the option to opt out. Colvin Dec. at ¶ 10. Instead, the contract was imposed upon her by a party of superior bargaining power, as the relationship between Plaintiff and Defendant was that of a prospective employee and employer. Oppression is therefore satisfied because:

> in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.

*Armendariz*, 24 Cal. 4th at 115.

Although the courts have found that a contract of adhesion satisfies the procedural unconscionability requirement, many courts have also acknowledged that "[w]here there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." *Ajamian*, 203 Cal. App. 4th at 796. Here, there is some additional evidence of surprise. For example, the arbitration clause is not specially set off from the rest of the contract or highlighted; at most, the heading "Arbitration" is underlined, but so too is every main section of the Confidentiality Agreement. *See* Confidentiality Agreement at § 10. At the same time, surprise is limited because the arbitration clause is not hidden in fine print or in a

6

voluminous document, as the Confidentiality Agreement is only five pages long, with the arbitration clause taking up about half of page four.

There is also additional, albeit limited, procedural unconscionability from Defendant's failure to attach the AAA rules. Several California courts have found that "the failure to provide a copy of the arbitration rules to which the employee would be bound, supported a finding of procedural unconscionability." *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393 (2010). By only referencing the applicable rules, rather than attaching them, the burden is placed on the employee to search for the rules. *See Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003). The procedural unconscionability is heightened when the agreement in question does not specify which rules are to be applied, such as whether the rules at the time of contracting or at the time of arbitration will govern. *Id.* at 1407. At the same time, other courts have suggested that the amount of procedural unconscionability from not attaching the rules is low, especially when the rules are readily available on the internet. *See Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 691 (2014). In the instant case, the failure to attach the AAA rules adds to the procedural unconscionability, particularly Defendant's failure to identify which version of the AAA rules would apply in the event of changes to the rules. At the same time, the AAA rules are readily available on-line, and there is no evidence that Plaintiff did not have ample time to review the Confidentiality Agreement or search for the rules prior to signing. Altogether, the fact that the Confidentiality Agreement was a contract of adhesion and the failure to specify which AAA rules applied satisfy the requirement that there be at least some procedural unconscionability requirement before proceeding to examine substantive unconscionability.

2.      Substantive Unconscionability

The primary focus of the substantive unconscionability inquiry "is whether the term is one-sided and will have an overly harsh effect on the disadvantaged party." *Pokorny*, 601 F.3d at 997. "Thus, mutuality is the 'paramount' consideration when assessing substantive unconscionability." *Id.* Here, Plaintiff challenges four terms as being substantively unconscionable: (1) the carve-out that allows Defendant to file claims against Plaintiff in court, (2) the confidentiality clause, (3) the limitation on discovery in the AAA rules, and (4) the possibility that Plaintiff will be subject to

7

arbitration costs that she would not have to bear if she litigated her claims in court.

        a.     <u>Carve-Out</u>

Plaintiff first contends that the Confidentiality Agreement's carve-out demonstrates a lack of mutuality because it exempts from arbitration claims that Defendant is more likely to bring against her. A lack of mutuality can be found where an agreement "compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party." *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 724 (2004). While the party with superior bargaining power "may provide 'extra protection' for itself within the terms of the arbitration agreement," that party must establish that "'business realities' create a special need for the advantage." *Id.* at 723. Business realities can be established either in the contract terms or through factual evidence. *Id.*

Here, Defendant argues that its retention of the right to seek a judicial injunction for proprietary information or trade secrets claims is reasonably justified by a business purpose, as "[t]ime is of the essence when an employer is faced with threats of misappropriation of trade secrets or the disclosure o[f] proprietary information." Docket No. 20 (Reply) at 8. Some districts courts have indeed found that concerns about intellectual property are a reasonable justification for carving out certain claims from the arbitration clause. *See Laughlin v. VMware, Inc.*, Case No. 5:11-cv-00530 EJD, 2012 U.S. Dist. LEXIS 12262, at *17-18 (N.D. Cal. Feb. 1, 2012). However, California courts have rejected precisely that same argument. For example, in *Stirlen v. Supercuts, Inc.*, Supercuts also argued that threats of patent infringement, improper use of confidential information, and competition posed "'an immediate threat to business operations' [that] therefore require[d] immediate access to the courts, which alone can provide meaningful 'emergency relief.'" 51 Cal. App. 4th 1519, 1536 (1997). The Court of Appeal found that there was no legitimate business reality because "[t]he forms of emergency judicial relief Supercuts asserts it must have *are* available to a party compelled to arbitrate a dispute." *Id.* at 1537. Specifically, California Code of Civil Procedure section 1281.8, subdivision (b) permits a party subject to an arbitration agreement to go to court for provisional remedies -- including injunctions and temporary protective orders -- in connection with an arbitrable controversy, "upon the ground that

the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." Thus, "[t]he unilateral right to litigate rather than arbitrate claims . . . cannot be justified by the need for provisional remedies." *Id.*; *see also Fitz*, 118 Cal. App. 4th at 723-24; *O'Hare v. Mun. Res. Consultants*, 107 Cal. App. 4th 267, 277-78 (2003); *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 177-78 (2002).

The Court finds that the carve-out for intellectual property claims is not reasonably justified by a business purpose because California Code of Civil Procedure section 1281.8 provides Defendant with the right to seek a provisional remedy when faced with the threat of improper disclosure of proprietary information. This conclusion is bolstered by the fact that the carve-out is far broader than Defendant suggests, as the Confidentiality Agreement requires that the employee "agree[] that his/her breach of any of the foregoing provisions will result in irreparable injury," and that "the Company parties shall be entitled to obtain an injunction to prevent and/or remedy such a breach (without first having to post a bond)." Confidentiality Agreement at § 9. Those "foregoing provisions" include requirements that the employee not publish any disparaging statements about Defendant, disclose any inventions the employee develops during his or her employment, and comply with any subpoena or process. *Id.* at §§ 4-6. Defendant does not attempt to argue that these provisions also require immediate injunctive relief. Thus, the broad right of the employer to obtain injunctive relief from a court is not justified by business need. The carve-out thus creates a lack of mutuality wherein the Defendant can force employee claims to arbitration while reserving the judicial forum for claims that Defendant is more likely to bring against its employees. The Court therefore holds that the carve-out is substantively unconscionable.[3]

---

[3] Defendant also argues that the carve-out is irrelevant here because Plaintiff's claims do not relate to the carve-out. Reply at 8. In support, Defendant cites *Dauod v. Ameriprise Financial Services*, where the district court rejected an argument that a non-compete provision and a PAGA waiver were unconscionable because neither provision was at issue in the lawsuit. Case No. 8:10-cv-00302-CJC(MANx), 2011 U.S. Dist. LEXIS 150972, at *14-16 & fn. 2 (C.D. Cal. Oct. 12, 2011). However, with respect to PAGA, the district court notably found that the arbitration clause did not actually preclude the plaintiff from bringing a PAGA action. *Id.* at *16.

In any event, the fact that Plaintiff's claims do not relate to the carve-out is immaterial to

b. Confidentiality Provision

Next, Plaintiff challenges the confidentiality provision. The courts have generally found that confidentiality provisions are substantively unconscionable. For example, in *Davis*, at issue was a confidentiality provision which required that:

> [e]xcept as may be necessary to enter judgment upon the award . . . all claims, defenses, and proceedings (including . . . the existence of a controversy and the fact that there is a mediation or an arbitration proceeding) shall be treated in a confidential manner by the mediator, the Arbitrator, the parties and their counsel, each of their agents, and employees and all other acting on behalf of or in concert with them. . . . no one shall divulge to any third party not directly involved in the mediation or arbitration the content of the pleadings, papers, orders, hearings, trials, or awards in the arbitration, except as may be necessary to enter judgment upon the arbitrator's award . . . .

*Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1071 (9th Cir. 2007). The Ninth Circuit found that by precluding even mentioning the dispute to anyone "not directly involved in the mediation or arbitration," the confidentiality provision "would handicap if not stifle an employee's ability to investigate and engage in discovery" as the employee would be prevented from contacting other employees to assist in his or her case. *Id.* at 1078. In addition to restricting discovery, the provision "would also place [the employer] 'in a far superior legal position' by preventing plaintiffs from accessing precedent while allowing [the employer] to learn how to negotiate and litigate its contracts in the future." *Id.* Thus, strict confidentiality "could also prevent others from building cases." *Id.*

Similarly, *Pokorny* held that a confidentiality provision which prohibited one party from "disclosing 'to any other person not directly involved in the conciliation or arbitration process (a) the substance of, or basis for, the claim, (b) the content of any testimony or other evidence presented at an arbitration hearing or obtained through discovery; or (c) the terms or amount of any arbitration award" was substantively unconscionable. 601 F.3d at 1001 (citation omitted). The Ninth Circuit found that the provision would prevent the plaintiffs "from discussing their

---

the unconscionability inquiry; the issue is whether "the arbitration agreement *as written* is unconscionable and contrary to public policy." *See Armendariz*, 24 Cal. 4th at 125 (emphasis added).

10

1  claims with other potential plaintiffs and from discovering relevant precedent to support their
2  claims." *Id.* at 1002.  Meanwhile, the employer would be able to "accumulate 'a wealth of
3  knowledge' on how to arbitrate future claims . . . ." *Id.*
4      Here, the confidentiality provision requires that:

> Employee shall not disclose the existence of a claim, the nature of a claim, any documents, exhibits, or information exchanged or presented in connection with such a claim, or the result of any action . . . to any third party, with the sole exception of Employee's legal counsel, who also shall be bound by these confidentiality terms.

Confidentiality Agreement at § 10.  As Plaintiff points out, this confidentiality provision imposes a significant burden on discovery, preventing Plaintiff from even contacting other employees for information.  The confidentiality provision also greatly favors Defendant, as Defendant obtains the benefits of being a repeat player in litigation while potential plaintiffs are unable to access precedent regarding prior arbitrations.  Defendant provides no justification for the confidentiality clause, and in its papers admits that the confidentiality clause "could potentially add to the degree of substantive unconscionability," but argues that it alone is insufficient to defeat the agreement.  Reply at 7.  At oral argument, Defendant also claimed that the confidentiality provision would not affect discovery because the confidentiality provision is trumped by the AAA rules, which provide for discovery.  The Court is not persuaded, as the Confidentiality Agreement states that the arbitration shall be conducted according to the AAA rules "as modified herein."  Confidentiality Agreement at § 10.  Such modifications would include the confidentiality provision, which in turn restricts Plaintiff's ability to gather information in support of her case.  The Court therefore concludes that the confidentiality provision is substantively unconscionable.

        c.     <u>Discovery Rights</u>

    Plaintiff argues that the AAA rules limit her rights to discovery, as AAA Rule 9 states that "[t]he arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration."

    The Ninth Circuit has recently recognized that "California law permits parties to arbitrate under the [AAA]'s employment dispute rules." *Sakaab v. Luxottica Retail N. Am.*, -- F.3d --, 2015

1  WL 5667912, at *10 (9th Cir. 2015) (citing *Roman v. Superior Court*, 172 Cal. App. 4th 1462,
2  1476 (2009)). In *Armendariz*, the California Supreme Court found that as an initial matter, "when
3  parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the
4  contrary, to such procedures as are necessary to vindicate that claim." 24 Cal. 4th at 106. Thus,
5  employees "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim,
6  including access to essential documents and witnesses, *as determined by the arbitrator(s) . . . .*"
7  *Id.* (emphasis added). The Court of Appeal in *Roman* concluded that because the AAA rule
8  likewise gave the arbitrator the authority to permit discovery "necessary to a full and fair
9  exploration of the issues in dispute," there was "no meaningful difference between the scope of
10 discovery approved in *Armendariz* and that authorized by the AAA employment dispute rules,
11 certainly not the role of the arbitrator in controlling the extent of actual discovery permitted." 172
12 Cal. App. 4th at 1476; *see also Lane*, 224 Cal. App. 4th at 693.

13 Plaintiff argues that the Court of Appeal in *Sparks* found that the AAA rules on discovery
14 were unconscionable. 207 Cal. App. 4th at 1523. However, there the defendant had claimed that
15 the "rules gave the arbitrator the discretion to deny *any* discovery." *Id.* (citation omitted). The
16 Court of Appeal did not appear to analyze the rule on its own, but took the defendant's claim at
17 face value to conclude that such a discovery provision would be substantively unconscionable. In
18 contrast, the California courts that have actually analyzed the AAA rule have each found that it
19 satisfies *Armendariz*'s requirements of discovery, in which "the employer impliedly agreed to all
20 discovery necessary to adequately arbitrate the claims." *Lane*, 224 Cal. 4th at 693. While the
21 AAA rule does not require the arbitrator to allow discovery, it does require that the arbitrator
22 allow discovery necessary to a full and fair exploration of the issues, and there is no indication
23 here that Plaintiff risks a situation in which an arbitrator could completely deny discovery. Here,
24 Defendant makes no such claim that all discovery should be denied, and the rule at issue grants the
25 arbitrator the authority to order discovery as is necessary to fully and fairly explore the issues in
26 dispute. Thus, the Court finds that there is no substantively unconscionable limitation on
27 discovery.
28

### d. Costs of Arbitration

Finally, Plaintiff argues that there is substantive unconscionability because she may be exposed to arbitration costs that she would not bear if she litigated her claims in court. Opp. at 22. The California Supreme Court has been clear that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24 Cal. 4th at 110-11; *see also Pokorny*, 601 F.3d at 1004.

Under the AAA rules, an employee's costs are dependent on whether the dispute arises out of an employer-promulgated plan or an individually-negotiated employment agreement. If the dispute arises from an employer-promulgated plan, AAA Rule 48 provides that "a non-refundable filing fee capped in the amount of $200 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less." Docket No. 15-1, Exh. 1 at 32; RJN, Exh. 1 at 33. The employer is then required to pay the arbitrator's compensation "unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation." *Id.* Arbitrator compensation, expenses, and administrative fees "are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous." *Id.* However, if a dispute arises from an individually-negotiated employment agreement, the employer is not required to pay the arbitration fees. RJN, Exh. 2 at 1.

Plaintiff contends that because the arbitrator determinates whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement, there is a possibility that she may have to pay the arbitration fees if the arbitrator finds that the latter is at issue. However, there is no dispute between the parties here that the employment agreement between Plaintiff and Defendant is an employer-promulgated plan. An arbitrator could not find otherwise. The arbitrator determines what type of agreement it is by looking at whether the arbitration agreement is "one in which it appears that the employer has drafted a standardized arbitration clause with its employees," and "the ability of the parties to negotiate the terms and

13

conditions of the parties' agreements." RJN, Exh. 2 at 1.  Here, the arbitration clause is a "standardized arbitration clause," and Plaintiff had no ability to negotiate the terms. *See* Colvin Dec. at ¶ 10.  The employment offer letter is also standard, providing her with the terms and conditions of her employment that Defendant "reserves the right to modify . . . at any time." Colvin Dec. at Exh. 1.  Any benefits such as an equity grant are determined at the "sole discretion" of the CEO and CFO, "subject to the terms and conditions of the relevant plan documents," and bonus levels "are based upon corporate financial, business unit and individual performance results." *Id.*  No opportunity is given to modify the terms of the employment; Plaintiff can only accept the offer as described.

Plaintiff's baseless speculation that an arbitrator could find that her claim arises from an individually-negotiated employment agreement is insufficient to show that she may be exposed to costs that she would not otherwise bear if she litigated her claims in court.  The Court therefore finds no substantive unconscionability because there is no evidence that the AAA rules will require Plaintiff to pay more than the initial filing fee.[4]

   e.  Summary

There is significant substantive unconscionability.  Under the sliding scale test, the combination of modest procedural unconscionability and significant substantive unconscionability as to two terms, renders those provisions unenforceable.

  3.  Severability

If a court finds as a matter of law that "'the contract or any clause of the contract [was] unconscionable at the time it was made[,] the court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause so as to avoid any unconscionable result.'" *Armendariz*,

---

[4] Defendant also argues that Plaintiff's substantive unconscionability claims are "rendered moot by Defendant's concession that it would need to be responsible for the types of costs unique to the arbitration forum."  Again, courts have not been willing to consider such after-the-fact concessions, as whether a party is now willing to excise an unconscionable clause in a contract "does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy." *Armendariz*, 24 Cal. 4th at 125.

1    24 Cal. 4th at 121 (quoting Cal. Civ. Code § 1670.5(a)).  California law favors severance of

2    unconscionable terms where "the interests of justice would be furthered by severance." *Id.* at 123

3    (internal citations and modifications omitted).  Thus, only where the agreement is "permeated by

4    unconscionability" or where the "central purpose of the contract is tainted with illegality" should

5    the court refuse to sever the offending terms. *Id.*

6    Here, there are two unconscionable provisions - the carve-out and the confidentiality

7    clause.  Both may be excised without requiring the Court to reform or augment the agreement, as

8    the remaining terms sufficiently govern how the arbitration would work.  *Roman*, 172 Cal. App.

9    4th at 1478; *see also Burgoon v. Narconon of N. Cal.*, No. C-15-1381 EMC, 2015 U.S. Dist.

10   LEXIS 114228, at *40 (N.D. Cal. Aug. 27, 2015).  Furthermore, notwithstanding the two

11   unconscionable provisions, the arbitration clause meets the fundamental requirements articulated

12   by *Armendariz*, including the "neutrality of the arbitrator, the provision of adequate discovery, a

13   written decision that will permit a limited form of judicial review, and limitations on the costs of

14   arbitration." *Id.* at 91.  Severance is also warranted here because the Confidentiality Agreement

15   includes an express severability clause, giving the Court "the authority to amend or modify this

16   Agreement so as to render it enforceable . . . ." Confidentiality Agreement at § 11(b).  *See Al-*

17   *Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1271 (9th Cir. 2005).  The Court therefore finds it

18   appropriate to sever the two unconscionable provisions, and enforce the remaining agreement to

19   arbitrate.

20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** Defendant's motion to compel arbitration, subject to severance of the carve-out and confidentiality provisions and with the understanding that Plaintiff will be afforded discovery rights consistent with *Armendariz*. Per the parties' request, the Court will stay the action pending arbitration. *See* 9 U.S.C. § 3.

This order disposes of Docket No. 15.

**IT IS SO ORDERED**.

Dated: November 4, 2015

_____
EDWARD M. CHEN
United States District Judge